**UNITED STATES, Plaintiff,**

v.

**U. S. KLANS, KNIGHTS OF KU KLUX KLAN, INC., a corporation; Alabama Knights, Knights of Ku Klux Klan, Inc., a corporation; Alvin Horn; Robert M. Shelton; Thurman E. Ouzts; Claude V. Henley; Lester B. Sullivan, Commissioner of Public Affairs of Montgomery; and Goodwin J. Ruppenthal, Chief of Police of Montgomery, Defendants.**

**Civ. A. No. 1718-N.**

United States District Court
M. D. Alabama, N. D.
June 2, 1961.

898

John Doar and Carl Eardley, Attys., U. S. Department of Justice, Washington, D. C., and Hartwell Davis, U. S. Atty., Montgomery, Ala., for plaintiff.

James R. Venable, Atlanta, Ga., W. Clarence Atkeison, Prattville, Ala., for defendants U. S. Klans, Knights of Ku Klux Klan, Inc., and Alvin Horn.

Dees & Fuller, Montgomery, Ala., for defendant Claude V. Henley.

James D. Hammonds, Bessemer, Ala., for defendants Alabama Knights, Knights of Ku Klux Klan, Inc., and Robert M. Shelton.

Calvin Whitesell, Montgomery, Ala., for Lester B. Sullivan and Goodwin J. Ruppenthal.

Thurman E. Ouzts, pro se.

JOHNSON, District Judge.

This cause is now submitted upon the motion of the plaintiff, United States, seeking to have this Court grant a preliminary injunction, enjoining the defendants U. S. Klans, Knights of the Ku Klux Klan, Inc., a corporation; Alabama Knights, Knights of the Ku Klux Klan, Inc., a corporation; Federated Ku Klux Klan, Inc., an unincorporated association represented by Lester C. Hawkins; Alvin Horn, Robert M. Shelton, Lester C. Hawkins, Thurman E. Ouzts, and Claude V. Henley from interfering with the free flow of interstate commerce within the State of Alabama. This Court previously on May 20, 1961, issued a temporary restraining order enjoining and restraining U. S. Klans, Knights of the Ku Klux Klan, Inc., Alabama Knights, Knights of the Ku Klux Klan, Inc., Federated Ku Klux Klan, Inc., Alvin Horn, Robert Shelton, Lester C. Hawkins, and Thurman E. Ouzts, their officers, members, agents, employees, and all persons acting in concert with them, from conspiring to interfere with the travel of passengers in interstate commerce through and in Alabama; and from committing acts of violence upon, or threatening, assaulting, intimidating or harassing passengers in interstate commerce in and through Alabama; and otherwise obstructing, impeding or interfering with the free movement of interstate commerce in and through the State of Alabama.

The submission of this matter was after notice to each of these defendants, and the submission is upon the evidence of several witnesses, both in person and by affidavit, and the several exhibits to the testimony of those witnesses. Having heard and understood the evidence, this Court now proceeds to make the appropriate findings of fact and conclusions of law.

This Court has jurisdiction of this matter and has jurisdiction over each of the above-named parties under the authority of Title 28, §§ 1345 and 1392(a), United States Code Annotated, this latter section providing, "Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts." The several motions filed by the above-named defendants, seeking to have this action dismissed on the grounds that the Court does not have jurisdiction and that service of process was outside the territorial limits of this district, are due to be overruled and denied. A formal order of this Court will be entered accordingly.

From the evidence in this case, this Court specifically finds that the U. S. Klans, Knights of the Ku Klux Klan, Inc., is a corporation chartered under the laws of the State of Georgia, but doing business in the State of Alabama and within this district; that Alvin Horn is the chief officer and administrative head of that organization; that the Alabama Knights, Knights of the Ku Klux Klan, Inc., is a corporation chartered under the laws of Alabama and is doing business within the State of Alabama and within this district; that Robert M. Shelton is the chief officer and administrative head of that organization. This Court further finds that Lester B. Sullivan is Commissioner of Public Affairs of the City of Montgomery and, as such, is responsible for the general supervision and administration of the Montgomery Police Department and for maintaining the peace and enforcing the law within the City of Montgomery; that Goodwin J. Ruppenthal is the Chief of Police of the City of

Montgomery and, as such, is responsible, under the direction of Sullivan, for the operation of the Montgomery Police Department and for preserving peace and enforcing the law within the City of Montgomery.

This Court further finds that in April of 1961 and continuing until the present time an organization known as the Congress of Racial Equality, usually referred to as CORE, together with the Southern Christian Leadership Conference, the Students Nashville Non-Violent Movement of Fisk University, Nashville, Tennessee; Martin Luther King, Jr., of Montgomery, Alabama and Atlanta, Georgia; Ralph D. Abernathy of Montgomery, Alabama; Wyatt Walker, address unknown; F. L. Shuttlesworth of Birmingham, Alabama; and Solomon S. Seay, Sr., of Montgomery, Alabama, acting in concert with other individuals and organizations, formulated plans for sending groups of individuals of both the white and Negro races by interstate motor carrier through the State of Alabama, including this district. The announced purpose of said trips was for determining whether facilities of interstate commerce, including motor bus and terminal facilities in Anniston, Birmingham and Montgomery, Alabama, were being operated on a racially segregated basis and, if so, to demonstrate peaceably against such operation, and by such demonstrations, through the cooperation of the press, to focus national attention on such operation of the motor bus and terminal facilities in these cities.

This Court further finds that on or about May 14, 1961, a group of such individuals was traveling in interstate commerce toward Birmingham in two groups—one group in a Greyhound bus and the other group in a Trailways bus; that on May 14, 1961, certain individuals, some or all of whom were conspirators with or members of the U. S. Klans, Knights of the Ku Klux Klan, Inc., and the Alabama Knights, Knights of the Ku Klux Klan, Inc., by force, threats and violence, intimidated the passengers on one of the buses and destroyed the bus at or near Anniston, Alabama; that said intimidation of the passengers and destruction of this bus by said conspirators was in furtherance of the conspiracy to prevent the passengers on the bus from carrying out their announced and intended purposes. This Court further finds that on May 14, 1961, upon the arrival in Birmingham of the Trailways bus referred to above, the U. S. Klans, Knights of the Ku Klux Klan, Inc., certain of its members, the Alabama Knights, Knights of the Ku Klux Klan, Inc., certain of its members, and other conspirators, unlawfully beat, assaulted, intimidated, threatened and harassed certain of the passengers who had alighted from this bus at the Trailways bus terminal.

This Court further finds that on May 20, 1961, it was a matter of public knowledge in Montgomery, Alabama, and was known to the Montgomery Police Department in Montgomery, Alabama, that a Greyhound bus carrying a group of white and Negro college students (which students had announced the purpose of riding through the State of Alabama, including Montgomery, on an interstate carrier, to determine whether they could use the instrumentalities of interstate commerce on such trip without racial segregation, or other illegal discrimination, and to demonstrate against any such discrimination should it occur) was en route from Birmingham to Montgomery. This Court finds that the Montgomery, Alabama Police Department was advised, through Spencer Robb, an agent of the Federal Bureau of Investigation of Montgomery, Alabama, that the bus carrying these passengers had left Birmingham at approximately 8:30 a. m.; and that this advice was given Acting Chief Marvin Stanley of the Montgomery Police Department by this agent of the Federal Bureau of Investigation at approximately 9:30 a. m. on the morning of May 20, 1961. The Court further finds that the Montgomery Police Department was aware of the fact that this bus had left Birmingham and was aware of the fact that certain difficulties had been encountered in Birmingham, Alabama, on May

14, 1961, when a similar group had arrived in Birmingham, Alabama. This Court further finds that a Montgomery Police Department officer, Detective Shows, stated to a reporter for The Montgomery Advertiser on the morning of May 20 that the Montgomery police "would not lift a finger to protect" this group. The evidence is abundantly clear and this Court specifically finds that Lester B. Sullivan, as Police Commissioner, was advised by Floyd Mann, Director of the Alabama Department of Public Safety, on the morning of May 20, 1961, that the bus in which this group was riding was en route from Birmingham to Montgomery, Alabama, and had reached a point twelve to fourteen miles from the city limits of Montgomery, Alabama, at approximately 10:00 a. m. The likelihood of violence was known to the Department of Public Safety, and that Department, acting through its head, Floyd Mann, had taken the necessary precautions to protect this bus from Birmingham to the city limits of Montgomery, Alabama, by assigning sixteen highway patrol cars and one airplane to accompany this bus from city limits to city limits. Through various sources, Sullivan and the Montgomery Police Department, through Sullivan, were aware of the explosive situation that existed in this area with reference to these riders, and with that knowledge did not take any of the usual precautionary measures to keep down violence in the City of Montgomery upon the arrival of this bus. Police Commissioner Sullivan, with this information—according to Police Officers Swindle, Moody, Lofton, Smith, Parham, and others—had not even alerted the Montgomery City Police Department on this morning of May 20 and no special plans had been made by the Montgomery City Police Department to ensure the safety of the group of students, to prevent unlawful acts of violence upon their persons, and to ensure the safe conduct of these groups of interstate travelers. This Court specifically finds that the Montgomery Police Department, under the direction of Sullivan and Ruppenthal (Acting Chief Stanley, upon behalf of Ruppenthal) willfully and deliberately failed to take measures to ensure the safety of the students and to prevent unlawful acts of violence upon their persons. This lack of protection on the part of the city police of Montgomery continued even after the arrival of the bus. From the testimony of witnesses and the radio log of the Police Department, no police car was dispatched to the area of violence until car No. 19 (with two officers) was sent at 10:33 a. m. "to investigate." At 10:37 a. m., car No. 25 was also sent to investigate. It is significant that none of the officers in these two cars testified in this case. At 10:39 a. m., car No. 29 was sent to the general area "to direct traffic." The police dispatcher's radio log does not reflect that any other help was sent by the dispatcher to the station until 11:24 a. m.

This Court further specifically finds that the U. S. Klans, Knights of the Ku Klux Klan, Inc., and the Alabama Knights, Knights of the Ku Klux Klan, Inc., through certain of their leaders and members, conspired to and did commit acts of violence upon these interstate student-passengers or damage to the buses in Anniston, Alabama, and in Birmingham, Alabama, on May 14, 1961, and in Montgomery, Alabama, on May 20, 1961. This Court further finds that the defendant Henley and the defendant Ouzts acted in concert with the Klan groups herein named to commit acts of violence upon certain of the passengers and/or others in and around the passengers who had moved in interstate commerce and arrived at the Montgomery Greyhound bus terminal in Montgomery, Alabama, on May 20, 1961; that the actions of Henley and Ouzts were of a threatening and intimidating nature; that they committed acts of violence upon either passengers or newsmen, or both, at or near the bus that had brought these students to Montgomery, Alabama; and that said acts of violence were committed by the said Henley and Ouzts for the purpose of interfering with the travel of passengers

in interstate commerce through Alabama and for the purpose of obstructing, impeding and interfering with the free movement of interstate commerce in and through Alabama. This Court specifically finds that the actions of the U. S. Klans, Knights of the Ku Klux Klan, Inc., Alabama Knights, Knights of the Ku Klux Klan, Inc., Robert M. Shelton as chief officer and administrative head of the Alabama Knights, Knights of the Ku Klux Klan, Inc., and Alvin Horn as chief officer and administrative head of the U. S. Klans, Knights of the Ku Klux Klan, Inc., conspired and acted to interfere with the travel of passengers in interstate commerce on May 14 and May 20, 1961, and on said dates obstructed, impeded and interfered with the free movement of interstate commerce in and through the State of Alabama and in and through this district.

Pursuant to the above findings, this Court now concludes that this action is brought by the United States to protect the interests of citizens of the United States in the free and unobstructed movement of interstate commerce and in the exercise of the constitutional power of the United States over such commerce. This Court further concludes that the injury to the public that would possibly flow from this Court's denying this preliminary injunctive relief would be irreparable, and, further, that there will be no injury to the defendants if a preliminary injunction is issued.

■ The leading case on this question of the United States' being entitled to equitable relief against the unlawful obstruction of or interference with the free flow of interstate commerce is In re Debs, 158 U.S. 564, 586, 15 S.Ct. 900, 907, 39 L.Ed. 1092. The Supreme Court in that case concluded with a statement that is particularly applicable to the situation this Court is now faced with:

> " * * * while it is not the province of the government to interfere in any mere matter of private controversy between individuals, or to use its great powers to enforce

the rights of one against another, yet, whenever the wrongs complained of are such as affect the public at large, and are in respect of matters which by the Constitution are entrusted to the care of the nation, and concerning which the nation owes the duty to all the citizens of securing to them their common rights, then the mere fact that the government has no pecuniary interest in the controversy is not sufficient to exclude it from the courts, or prevent it from taking measures therein to fully discharge those constitutional duties.

> "The national government, given by the Constitution power to regulate interstate commerce, has by express statute assumed jurisdiction over such commerce when carried upon railroads. It is charged, therefore, with the duty of keeping those highways of interstate commerce free from obstruction, for it has always been recognized as one of the powers and duties of a government to remove obstructions from the highways under its control."

See also Robbins v. United States, 10 Cir., 284 F. 39; Perko v. United States, 8 Cir., 204 F.2d 446, and other cases therein cited.

■ The failure of the defendant law enforcement officers to enforce the law in this case clearly amounts to unlawful state action in violation of the Equal Protection Clause of the Fourteenth Amendment. The fact that this action was of a negative rather than an affirmative character is immaterial. Only recently the Supreme Court stated in Burton v. Wilmington Parking Authority et al., 365 U.S. 715, 81 S.Ct. 856, 861, 6 L.Ed.2d 45:

> "But no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be. It is of no consolation to an individual denied the equal protection of the laws that it was

done in good faith. \* \* \* By its inaction \* \* \* the State \* \* \* has elected to place its power, property and prestige behind the admitted discrimination."

■ The willful and deliberate failure on the part of the law enforcement officers was also unlawful in that it deprived the student-passengers and other passengers of their rights without due process of law. It is a settled proposition that transportation of passengers in commerce and the right of a passenger to travel in commerce is a right of citizenship which cannot be deprived without due process of law under the Fifth Amendment to the Constitution of the United States. See Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204.

■ This Court now further concludes that it is proper and necessary in this case to enter an order enjoining the U. S. Klans, Knights of the Ku Klux Klans, Inc.; Alabama Knights, Knights of the Ku Klux Klan, Inc.; Alvin Horn as the chief officer and administrative head of the U. S. Klans, Knights of the Ku Klux Klan, Inc.; Robert M. Shelton as the chief officer and administrative head of the Alabama Knights, Knights of the Ku Klux Klan, Inc.; Thurman E. Ouzts, Claude V. Henley, their agents, employees, officers, members, and all persons acting in concert with them from:

(1) Conspiring to interfere with the travel of passengers in interstate commerce through Alabama free from racial segregation and other unjust discrimination;

(2) Committing acts of violence upon, or threatening, intimidating, assaulting or harassing any passengers in interstate commerce in or through Alabama;

(3) Threatening, intimidating, committing acts of violence upon or injuring the persons or property of the Gulf Transport Company, Southeastern Stages, Inc., the Greyhound Corporation, their agents, officers, employees or drivers, on account of their carrying, attempting to carry or having carried passengers in interstate commerce without unjust discrimination; and

(4) Otherwise obstructing, impeding, or interfering with the free movement of interstate commerce in and through the State of Alabama.

This Court further concludes that it is appropriate and necessary in this case to enter an order enjoining Lester B. Sullivan as Commissioner of Public Affairs of the City of Montgomery and, as such, responsible for the general supervision and administration of the Montgomery Police Department and for maintaining the peace and enforcing the law within the City of Montgomery, and Goodwin J. Ruppenthal, Chief of Police of the City of Montgomery, their officers, agents, employees, and all those acting in concert with them, from failing or refusing to provide protection for all persons traveling in interstate commerce in and through the City of Montgomery, Alabama.

The defendants Sullivan and Ruppenthal have, through their attorneys of record, petitioned this Court orally and in writing to issue a temporary restraining order against the Congress of Racial Equality, whose main address is 38 Park Row, New York City, New York, and which organization has done and is doing business in Alabama; the Southern Christian Leadership Conference, an unincorporated conference, which has done and is doing business in Alabama; Ralph D. Abernathy (a resident of this district), individually and as an officer in the Congress of Racial Equality and in the Southern Christian Leadership Conference; the Montgomery County Jail Council, an unincorporated council in Montgomery, Alabama; Ralph D. Abernathy as an officer and member of said council; the Student Nashville Non-Violent Movement, an unincorporated association of Nashville, Tennessee, which has done and is doing business in Alabama and in this district; Martin Luther King, Jr., individually and as the president of the Southern Christian Leadership Conference; Wyatt Tee Walker, individually and as the executive director

of the Southern Christian Leadership Conference; F. L. Shuttlesworth, and Solomon S. Seay, Sr. In support of this petition to bring these individuals in this case and to issue a temporary restraining order against them, restraining them from using the various interstate commerce carriers in this State and in this district for the purpose of causing dissension and disturbances, which dissension and disturbances cause an undue burden and undue restraint on the free flow of commerce in this State and in this district, the testimony taken under oath before this Court in this hearing is offered. Petitioners specifically rely upon the testimony of two witnesses who are officials for the Greyhound Lines.

The carriers involved in this cause, Gulf Transport Company, Southeastern Stages, and the Greyhound Corporation, having been authorized by the Interstate Commerce Act and by the terms of their certificates from the Interstate Commerce Commission, are required to provide safe and adequate service, equipment and facilities for the transportation of passengers in and through the State of Alabama. The bus terminals and the terminal facilities in Montgomery, Birmingham and Anniston are an integral and regular part of the interstate transportation provided and required to be provided by these companies.

As has already been observed by this Court, the actions of the several defendants in the use of violence, force, threats, intimidations and harassment operate to impede the movement of passengers during the course of interstate bus journeys. These actions forcibly obstruct and impede interstate commerce, and such actions are due to be halted.

Those who sponsor, finance and encourage groups to come into this area with the knowledge that such publicized trips will foment violence in and around the bus terminals and bus facilities are just as effective in causing an obstruction to the movement of bona fide interstate bus passengers as are those defendants named in the Government's complaint This Court now specifically finds that the so-called "Freedom Riders" and other like groups have been and are being sponsored, financed, and assisted in their actions by representatives and members in this area of the Congress of Racial Equality (CORE); the Southern Christian Leadership Conference; Ralph D. Abernathy, individually and as an officer in the Congress of Racial Equality and in the Southern Christian Leadership Conference; the Montgomery County Jail Council, and Ralph D. Abernathy as an officer and member of said council; the Student Nashville Non-Violent Movement; Martin Luther King, Jr., individually and as the president of the Southern Christian Leadership Conference; Wyatt Tee Walker, individually and as the executive director of the Southern Christian Leadership Conference; and representatives and other members of the organization called Southern Christian Leadership Conference who also reside or engage in activities in this district and State. This Court recognizes that this sponsorship, even though it is agitation within the law of the United States, is agitation that constitutes an undue burden upon the free flow of interstate commerce at this particular time and under the circumstances that exist in this State and district; for instance, the making of unnecessary additional facilities and buses available for these non-bona fide interstate trips, requiring the carriers to run extra schedules, and coordinating these schedules with armed escorts.

The fact that this agitation on the part of the members and representatives of the Congress of Racial Equality, the Southern Christian Leadership Conference, and the others named, is within the law of the United States and is activity that may be one of the legal rights belonging to these individuals as citizens of the United States, the right of the public to be protected from the evils of their conduct is a greater and more important right. As the Supreme Court of the United States so aptly put it in American Communications Ass'n v. Douds, 339 U.S. 382, 70 S.Ct. 674, 684, 94 L.Ed. 925:

"And Government's obligation to provide an efficient public service, United Public Workers [of America] v. Mitchell, 330 U.S. 75 [67 S. Ct. 556, 91 L.Ed. 754] (1947), and its interest in the character of members of the bar, In re Summers, 325 U.S. 561 [65 S.Ct. 1307, 89 L.Ed. 1795] (1945), sometimes admit of limitations upon rights set out in the First Amendment. And see Giboney v. Empire Storage Co., 336 U.S. 490, 499–501 [69 S.Ct. 684, 93 L.Ed. 834] (1949). We have never held that such freedoms are absolute. The reason is plain. As Mr. Chief Justice Hughes put it, 'Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses.' Cox v. [State of] New Hampshire, supra [312 U.S. 569] at 574 [61 S.Ct. 762, 85 L.Ed. 1049]."

The activity of the Congress of Racial Equality representatives and those acting in concert with them in this district and within this State, the activity of the Southern Christian Leadership Conference representatives and those acting in concert with them in this district and within this State, the Student Nashville Non-Violent Movement and those acting in concert with them, individuals F. L. Shuttlesworth, Ralph D. Abernathy, Solomon S. Seay, Sr., Martin Luther King, Jr., Wyatt Tee Walker, and those acting in concert with these individuals in sponsoring, encouraging, assisting and publicizing the so-called "Freedom Riders," or other like groups who are presently engaged in "agitating within the law," is just as effectively causing an undue burden and restraint upon the free flow of interstate commerce in this State and district as is the activity of the other defendants in this case. All are due to be enjoined and/or restrained from such further activities that produce this evil result.

Even though these sponsors have not been named as defendants in this action by the United States, this Court is under a duty, in granting the relief sought by the United States, to go further in this particular case and grant the public complete relief insofar as possible.

■ It is well settled that a district court of the United States, sitting as a court of equity, has inherent power to grant complete relief in the matter before it in controversy. As the Supreme Court of the United States said in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332:

"Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction."

■ The Court further said that if the public interest is involved in a proceeding those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. As the Court went on to say:

"Power is thereby resident in the District Court, in exercising this jurisdiction, 'to do equity and to mould each decree to the necessities of the particular case.' Hecht Co. v. Bowles, 321 U.S. 321, 329 [64 S.Ct. 587, 88 L.Ed. 754]. It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; *if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced.* In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. Camp v. Boyd, 229 U.S. 530, 551–552 [33

S.Ct. 785, 57 L.Ed. 1517]." (Emphasis added.)

■ As observed above, the right of the public to be protected from evils of conduct, even though the constitutional rights of certain persons or groups are thereby in some manner infringed, has received frequent and consistent recognition by the courts of the United States. As the Supreme Court said in American Communications Ass'n v. Douds, supra:

" * * * We have noted that the blaring sound truck invades the privacy of the home and may drown out others who wish to be heard. Kovacs v. Cooper, 336 U.S. 77 [69 S. Ct. 448, 93 L.Ed. 513] (1949). The unauthorized parade through city streets by a religious or political group disrupts traffic and may prevent the discharge of the most essential obligations of local government. Cox v. [State of] New Hampshire, 312 U.S. 569, 574 [61 S.Ct. 762, 85 L.Ed. 1049] (1941). The exercise of particular First Amendment rights may fly in the face of the public interest in the health of children, Prince v. [Commonwealth of] Massachusetts, 321 U.S. 158 [64 S.Ct. 438, 88 L.Ed. 645] (1944), or of the whole community, Jacobson v. [Commonwealth of] Massachusetts, 197 U.S. 11 [25 S.Ct. 358, 49 L.Ed. 643] (1905), and it may be offensive to the moral standards of the community, Reynolds v. United States, 98 U.S. 145 [25 L.Ed. 244] (1878); Davis v. Beason, 133 U.S. 333 [10 S.Ct. 299, 33 L.Ed. 637] (1890)."

This is not a restraining order enjoining individuals or groups who are traveling in interstate commerce through Alabama and through this district on bona fide trips. It is only directed to and against those organizations and individuals specifically named, or other like organizations or individuals acting in concert with them or acting as their agents or attorneys, that have been and are engaged in assisting, encouraging, financing and sponsoring groups and/or individuals in traveling in interstate commerce for the specific and announced purpose of testing and demonstrating. Such action has caused and is causing an undue burden and restraint on interstate commerce, resulting here in this State in the past few weeks in disrupting schedules of interstate carriers and causing bona fide interstate passengers to be subjected to violence, threats, intimidation and general inconvenience. While it is true that this violence is caused directly by the Klan groups and others acting in concert with them, and has been allowed by the willful failure of the police authorities to take the usual adequate, protective measures, it is equally true that the Congress of Racial Equality, the Southern Christian Leadership Conference, Ralph D. Abernathy, F. L. Shuttlesworth, Martin Luther King, Jr., and others acting in concert with them, by their actions in financing and sponsoring and aiding and assisting such non-bona fide trips are directly causing an undue burden and restraint upon interstate commerce within the State of Alabama and within this district.

■ This Court recognizes that the threat of mob violence is no excuse for the failure of the Court to issue an injunction to protect the constitutional rights of private citizens. Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5. However, that principle is not applicable in this case, since here the Court is issuing the injunction prayed for by the United States; however, as the Court has already observed, the granting of the injunction sought by the United States will only partly relieve the burden and restraint on interstate commerce within the State and this district.

The Cooper v. Aaron case is also not applicable here, since in that case the district court, in following Brown v. Board of Education, 349 U.S. 294, 75 S. Ct. 753, 99 L.Ed. 1083, had issued direct orders that certain students be admitted to attend a designated school. In that case the mob violence was directly traceable to State action on the part of State officials in resistance to the Brown deci-

sion. In this district, this Court has already been called upon to decide some of the very constitutional rights these individuals traveling in interstate commerce seek to enjoy. Since a class suit has recently been filed asking this Court to determine plaintiffs'[1] constitutional rights in this respect, continued testing of these laws or customs during the time this suit is pending in this Court can only serve to frustrate this pending litigation. This Court also recognizes the principle announced by the district court in Bush v. Orleans Parish School Board, D.C. 1960, 188 F.Supp. 916. The constitutional right in that case, as observed by the Court, had been granted by Brown v. Board of Education more than six years before the Court was faced with the situation that local conditions made compliance difficult. In this case, the constitutional right plaintiffs seek to invoke was only made definite by court decision last fall in Boynton v. Commonwealth of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L. Ed.2d 206. It has not yet been determined whether the local bus terminals fall within that classification that existed in the Boynton case.

In accordance with the foregoing, the preliminary injunction prayed for by the United States is due to be granted against U. S. Klans, Knights of the Ku Klux Klan, Inc., a corporation; Alabama Knights, Knights of the Ku Klux Klan, Inc., a corporation; Alvin Horn; Robert M. Shelton; Thurman E. Ouzts; Claude V. Henley; Lester B. Sullivan, Commissioner of Public Affairs of Montgomery; and Goodwin J. Ruppenthal, Chief of Police of Montgomery, their officers, agents, employees, members, and all persons acting in concert with them.

In accordance with the foregoing, a temporary restraining order, as authorized and provided by Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. A., and as prayed for by part of the defendants in this action, is due to be issued to prevent immediate and irreparable injury to the free flow of interstate commerce within this State and within this district, against the following: Congress of Racial Equality, Southern Christian Leadership Conference; Ralph D. Abernathy, individually and as an officer in the Congress of Racial Equality and as an officer in the Southern Christian Leadership Conference; the Montgomery City Jail Council and Ralph D. Abernathy as an officer and member of said council; the Student Nashville Non-Violent Movement; Martin Luther King, Jr., individually and as the president of the Southern Christian Leadership Conference; Wyatt Tee Walker individually and as the executive director of the Southern Christian Leadership Conference, F. L. Shuttlesworth and Solomon S. Seay, Sr., individually and as officers in one or more of the above-named organizations, and all others acting as their agents, officers, or members in or employees of, or acting in concert with them.

This Court is of the further conclusion and it is ORDERED that this cause be and the same is hereby amended to include as defendants each of the above-named individuals and organizations against whom the temporary restraining order is being issued.

This Court is of the further conclusion and it is ORDERED that the Honorable Hartwell Davis, United States Attorney for the Middle District of Alabama, and such other representative or representatives of the United States Department of Justice as may be designated by the Attorney General for the United States, be and each is hereby designated and appointed to present the evidence as amicus curiae at the hearing for a preliminary injunction, said hearing to be for the purpose of determining whether a preliminary injunction should issue, pending a trial on the merits against each of the individuals and organizations against whom this restraining order is being issued.

1. John R. Lewis et al. v. Southeastern Greyhound Lines et al., C.A. No. 1724–N, Middle District of Alabama.

The United States Marshal for this district is ordered and directed to serve a copy of these findings, conclusions and order and a copy of the formal preliminary injunction and a copy of the formal temporary restraining order upon each of the defendants in this action against whom the preliminary injunction is being issued and upon each of the defendants against whom the temporary restraining order is being issued.