James PECK, Plaintiff,

v.

The UNITED STATES of America, Thomas J. Jenkins, Associate Director of the Federal Bureau of Investigation, Barrett G. Kemp, and Four Unknown Agents of the Federal Bureau of Investigation, Defendants.

No. 76 Civ. 983 (CES).

United States District Court, S. D. New York.

April 25, 1979.

1004

Eric M. Lieberman, Rabinowitz, Boudin & Standard, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty. Southern District of New York by Peter C. Salerno, Asst. U. S. Atty., New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff filed this civil action against several named and unnamed FBI agents and the United States seeking damages and declaratory relief for alleged violations of his rights under the First, Fourth, Fifth, Ninth, Thirteenth and Fourteenth Amendments to the Constitution, under 42 U.S.C. §§ 1983, 1985(3) and 1986 and under the common law of Alabama. Jurisdiction is founded upon 28 U.S.C. §§ 1331(a), 1343(3) and (4), and 1346(b). The defendants moved to dismiss the action arguing *inter alia* that plaintiff failed to state a claim upon which relief can be granted, F.R. Civ.P. 12(b)(6). The Court assigned this case to United States Magistrate Sol Schreiber, who ordered discovery limited to the issues raised by the F.R.Civ.P. 12(b)(6) motion to dismiss. Thereafter, Magistrate Schreiber issued a Recommended Order ["Magistrate's Report"] which is now before this Court. The defendants have also moved in this court to dismiss plaintiff's action on the ground that it is barred by the applicable statute of limitations.

Plaintiff, in his complaint, alleges that on May 14, 1961, he was assaulted by "vigilantes", some or all of whom were members of the Ku Klux Klan, while participating in a "Freedom Ride" to Birmingham, Alabama sponsored by the Congress for Racial Equality to challenge segregation in public facilities used in interstate travel (Complaint ¶¶ 3, 8, 14, 15). Plaintiff further alleges that several FBI agents, as the result of knowledge obtained by and through an informant, Gary Thomas Rowe, Jr. (and possibly through other informants) had prior knowledge of a conspiracy between the Birmingham Police Department and the vigilantes to allow the vigilantes fifteen minutes to attack physically the "Freedom Riders" upon their arrival in Birmingham (Complaint ¶¶ 9–11). Plaintiff alleges that these agents, having such prior knowledge, failed to inform anyone in the Justice Department (other than FBI personnel) or to inform state or local officials of either the conspiracy or the planned violence, and made no attempt to deter the conspirators, or to prevent or mitigate the violence (Complaint ¶¶ 12, 19, 20). The Birmingham police did not appear until "approximately

fifteen minutes after the beating occurred" (Complaint ¶ 16) and no members of the vigilante group were ever arrested (Complaint ¶ 17).

## I. THE MAGISTRATE'S RECOMMENDED ORDER

On the basis of the limited discovery allowed by Magistrate Schreiber, it was:

[R]ecommended that an order be granted that plaintiff has stated a cause of action, grounded in common law tort, against the individual defendants and the United States. It is further recommended that plaintiff's claims based on the Civil Rights Act, 42 U.S.C. §§ 1983, 1985 and 1986, constitutional grounds and *respondeat superior*, as well as those for declaratory relief and against [Clarence M. Kelley, Director of the FBI], be dismissed. [Magistrate's Report at 21–22.]

In a previous Order and Judgment this Court, pursuant to the Magistrate's Report and upon the consent of the parties, dismissed all the claims as to defendants Kelley and Webster (William H. Webster, Kelley's successor as Director of the FBI, was automatically substituted for Kelley under F.R.Civ.P. 25(d)(1) insofar as Kelley was sued in his official capacity) and dismissed all claims for declaratory relief.

### A. *Civil Rights Act Claims Against the Individual Defendants*

Magistrate Schreiber recommended that the Civil Rights Act claims be dismissed because to state a cause of action under 42 U.S.C. §§ 1983, 1985(3) and 1986, a defendant must be acting under color of state law or acting jointly with state officials (Magistrate's Report at 8). The Magistrate found that since the individual defendants in this case were federal officials acting under color of federal, not state law, *Id.* at 8, and because plaintiff did not sufficiently allege joint action with state officials *Id.* at 7, plaintiff failed to state a claim upon which relief can be granted under §§ 1983, 1985(3) and 1986.

### 1. *§ 1983*

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

 Section 1983, by its own terms, applies to persons acting under color of *state* law. It does not generally extend to persons acting under color of federal law. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1346 (2d Cir. 1972). *See also: Soldevila v. Secretary of Agriculture of the United States,* 512 F.2d 427, 429 (1st Cir. 1975); *Bethea v. Reid,* 445 F.2d 1163, 1164 (3d Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972); *Norton v. McShane,* 332 F.2d 855, 862 (5th Cir. 1964), *cert. denied,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965); *Smith v. United States Civil Service Commission,* 520 F.2d 731, 733 (7th Cir. 1975); *Williams v. Rogers,* 449 F.2d 513, 517 (8th Cir. 1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 976, 30 L.Ed.2d 799 (1972). However, actions of federal officers may be the subject of a § 1983 suit if there is proof of a joint conspiracy with state officials, *Kletschka v. Driver,* 411 F.2d 436, 448 (2d Cir. 1969). Here it is claimed that the government was a joint participant in the conspiracy because defendants Jenkins, Kemp and defendants A through D had prior knowledge of the planned conduct of the vigilantes and the Birmingham police (Complaint ¶¶ 10, 11) but failed to report this to anyone in the Justice Department (other than FBI personnel) (Complaint ¶ 12) or to state and local officials (Complaint ¶ 19) and failed to deter the conspirators or take any other steps to prevent their actions (Complaint ¶ 13). Plaintiff also claims that there was joint government participation in that Rowe participated in the con-

spiracy (Complaint ¶ 23) and that the federal officers "approved the acts of Rowe and likewise participated in and furthered the aforesaid conspiracy" (Complaint ¶ 24). Plaintiff contends that this is sufficient to sustain, on a motion to dismiss, a claim that the government was a joint conspirator for purposes of *Kletschka*. We disagree. The proper standard is that set out in *Powell v. Workmen's Compensation Bd. of State of New York*, 327 F.2d 131, 137 (2d Cir. 1964) and applied by Magistrate Schreiber:

> [Plaintiff is] bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy. *Hoffman v. Halden, supra*, 268 F.2d [280] at 295. *See Dunn v. Gazzola*, 216 F.2d 709 (1 Cir. 1954); *Ortega v. Ragen*, 216 F.2d 561 (7 Cir. 1954), *cert. denied*, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955); *Yglesias v. Gulfstream Park Racing Ass'n, Inc.*, 201 F.2d 817 (5 Cir.), *cert. denied*, 345 U.S. 993, 73 S.Ct. 1132, 97 L.Ed. 1400 (1953); *McGuire v. Todd*, 198 F.2d 60 (5 Cir.), *cert. denied*, 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649 (1952).

*See Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637, 643–44 (S.D.N.Y. 1977). Plaintiff contends that several documents obtained during discovery "clearly establish the individual defendants' knowledge of the vigilante action." But knowledge by the FBI agents, even coupled with allegations of failure to take any action is insufficient to plead joint participation in a conspiracy. Plaintiff's reliance on *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) is misplaced. Plaintiff refers us to the following language:

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. (*Sims v. Adams* (5th Cir. 1976)

537 F.2d 829. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite casual connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. (*Cf. Beverly v. Morris* (5th Cir. 1972) 470 F.2d 1356.)

*Id.* at 743. However, this defines the phrase "subjects, or causes to be subjected" in § 1983 and is applicable only if there is state action. It does not define the "joint conspiracy" requirement of *Kletschka,* which must be satisfied when plaintiff seeks to include federal officers under § 1983. Plaintiff concedes that as to his second basis for alleging conspiracy, "there is no record of the individual defendants sanctioning Rowe for his participation in that prior act; there is evidence that they rewarded him for his role in the conspiracy that led to Peck's injury. (Defendants' documents p. 37 record a bonus payment to Rowe.)" Plaintiff's Memorandum of Law at 20. This evidence, ambiguous as it is, is hardly sufficient to save plaintiff's vague and conclusionary allegations. Inasmuch as plaintiff has failed to sufficiently allege a joint conspiracy so as to state a cause of action against the individual federal defendants under 42 U.S.C. § 1983, that claim is dismissed.

### 2. §§ 1985(3) and 1986

Plaintiff has also asserted claims under 42 U.S.C. §§ 1985(3) and 1986. Section 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law . . . . [then] if

one or more persons engaged therein do, or cause to be done, any act in further- ance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citi- zen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in pre- venting the commission of the same, ne- glects or refuses so to do, if such wrong- ful act be committed, shall be liable to the party injured, or his legal representa- tives, for all damages caused by such wrongful act, which such person by rea- sonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; . . .

The law in this circuit until 1971 was that these sections did not permit relief against the actions of federal officers acting under color of federal law. In *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), plaintiff sued Francis Biddle, the U.S. Attorney General, and other federal officials to recover for his false arrest as an enemy alien. The Second Circuit, in an opinion written by Judge Learned Hand, held that plaintiff did not state a cause of action under the Civil Rights Acts. The court held that plaintiff failed to state a claim under Section 47(3) [42 U.S.C. § 1985(3)] because to construe the statutory language in the manner suggested by plain- tiff so as to create "a claim against any two persons who conspire to injure another for spite or other improper motives," *Id.* at 581, would be to read the statutory language out of context, and that furthermore, "it is apparent that they [the words] could not

have had such a scope without destroying their validity constitutionally." *Id.* Plain- tiff was also held to have failed to state a cause of action under section 48 [42 U.S.C. § 1986] because "section 48 does not go beyond what is forbidden by § 47." It is not clear from the opinion whether the court objected to plaintiff's attempt to cre- ate a cause of action "against any two persons" including federal officers, or to plaintiff's attempt to have the statute con- strued as reaching any conspiracy to injure another for spite or improper motive, there- by interpreting § 1985(3) as a general tort law. Later cases have construed *Gregoire* as standing for the former proposition.

The continued vitality of *Gregoire v. Bid- dle, supra* as construed is in substantial doubt in light of the Supreme Court opinion in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In that case the court held, contrary to its previous holdings, that Section 1985(3) reached pri- vate conspiracies. The Court looked to the text of § 1985(3), its companion provisions and its legislative history. Looking first to the text, the Court stated that "[o]n their face, the words of the statute ['two or more persons'] fully encompass the conduct of private persons." Moreover, the omission of any reference to "state action" in defin- ing the constitutional deprivations covered, was:

[A]n important indication of congression- al intent to speak in § 1985(3) of all deprivations of "equal protection of the laws" and "equal privileges and immuni- ties under the laws," whatever their source.

*Id.* at 97, 91 S.Ct. at 1796. The Court stated that its general approach to the con- struction of the civil rights statutes was to " 'accord [them] a sweep as broad as their language.' " *Id.* Finally, the Court relied on the construction it gave to similar lan- guage in the criminal counterparts of this statute, which the Court held extended to private action. The Court further found that to read § 1985(3) consistently with its companion provisions it would have to be read to reach private conspiracies. If a

state action requirement were read into § 1985(3), that section would merely be duplicative of the other sections. Finally, the Court referred to legislative history which indicated that § 1985(3) was intended to reach private conspiracies.

The Supreme Court further found that as construed § 1985(3), contrary to dicta in previous holdings, was constitutional. The Court held that at least as applied in *Griffin,* § 1985(3) was based not on the Fourteenth Amendment, which requires state action, but rather on Section 2 of the Thirteenth Amendment:

> We can only conclude that Congress was wholly within its powers under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men.

*Id.* at 105, 91 S.Ct. at 1800. Furthermore, the court held that § 1985(3) would be constitutional as construed because:

> Our cases have firmly established that the right of interstate travel is constitutionally protected, does not necessarily rest on the Fourteenth Amendment, and is assertable against private as well as governmental interference. *Shapiro v. Thompson,* 394 U.S. 618, 629–631, 89 S.Ct. 1322, 1328–1330, 22 L.Ed.2d 600; *id.,* at 642–644, 89 S.Ct. at 1335–1336 (concurring opinion); *United States v. Guest,* 383 U.S. 745, 757–760 and n.17, 86 S.Ct. 1170, 1177–1180, 16 L.Ed.2d 239; *Twining v. New Jersey,* 211 U.S. 78, 97, 29 S.Ct. 14, 18, 53 L.Ed. 97; *Slaughter-House Cases,* 16 Wall. 36, 79–80, 21 L.Ed. 394; *Crandall v. Nevada,* 6 Wall. 35, 44, 48–49, 18 L.Ed. 744; *Passenger Cases (Smith v. Turner),* 7 How. 283, 492, 12 L.Ed. 702 (Taney, C. J., dissenting). The "right to pass freely from state to state" has been explicitly recognized as "among the rights and privileges of National citizenship." *Twining v. New Jersey, supra* 211 U.S. at 97, 29 S.Ct., at 19. That right, like other rights of national citizenship, is within the pow-

er of Congress to protect by appropriate legislation. E. g., *United States v. Guest, supra,* 383 U.S. at 759, 86 S.Ct. at 1178; *United States v. Classic,* 313 U.S. 299, 314–315, 61 S.Ct. 1031, 1037–1038, 85 L.Ed. 1368; *Ex parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274; *Oregon v. Mitchell,* 400 U.S. 112, 285–287, 91 S.Ct. 260, 345–346, 27 L.Ed.2d 272 (concurring and dissenting opinion.)

*Id.* at 105–106, 91 S.Ct. at 1800.

In light of the Court's new reading of the statutory language, and in light of its re-evaluation of the constitutional basis of this section, *Gregoire v. Biddle, supra,* needs to be re-examined. At least one judge in this district has found that in *Griffin* "[T]he Supreme Court explicitly disavowed both the statutory and constitutional interpretation espoused by Judge [Learned] Hand". *Moriani v. Hunter,* 462 F.Supp. 353, 356 (S.D.N.Y.1978). In *Alvarez v. Wilson,* 431 F.Supp. 136 (N.D.Ill.1977), another district court exhaustively analysed the question of the application of Sections 1985(3) and 1986 to federal officers in light of *Griffin.* The court held that as to the language of § 1985:

> Unlike § 1983, the text of § 1985 nowhere indicates that defendants must be acting under color of state law. It does not differentiate between state, private, or federal conspiracies. Relying in part on its broad language, the Supreme Court held that § 1985(3) applies to private conspiracies. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Without specifically mentioning federal officer conspiracies, the Court said that § 1985(3) was aimed against all conspiracies, whatever their source. A fair interpretation of the plain language then suggests that federally originated conduct is covered.

*Alvarez v. Wilson,* 431 F.Supp. at 141. The district court looked next to the context of § 1985. In *Alvarez* the defendants contended that, if § 1985 were held to extend to federal officers, it would simply be duplicative of §§ 1981 and 1982. The court stated:

This contention is illogical. Section 1981 and § 1982 are limited to contractual and housing rights respectively. *Alvarez* has not alleged any deprivation of rights secured under § 1981 or § 1982. Section 1985(3), however, which prohibits racially motivated conspiracies generally, can assist him. If § 1985(3) reaches federal conspiracies, other remedies under the civil rights statutes would not be duplicated.

*Id.* Legislative history gave the court the most trouble:

Section 1985, along with § 1983, originated in the Civil Rights Act of 1871, also known as the Ku Klux Klan Act. It was specifically aimed at state officials and members of the Ku Klux Klan (persons who go in disguise on the highway) who had been terrorizing blacks. Primarily, the Civil Rights Act of 1871 is considered an exercise of Congressional power under the Fourteenth Amendment. And the commands of the Fourteenth Amendment are addressed only to the state or to those acting under color of state law. *District of Columbia v. Carter, supra,* 409 U.S. [418] at 423, 93 S.Ct. 602 [34 L.Ed.2d 613]. In contrast, § 1981 and § 1982 originated in the Civil Rights Act of 1866. Congress relied upon the Thirteenth Amendment in enacting this statute, and consequently, legislative jurisdiction does not require state action. *Id.* at 424, 93 S.Ct. 602. This distinction suggests that § 1985 does not apply to federal action. Some courts have so held. *Moore v. Schlesinger,* 384 F.Supp. 163 (D.Colo.1974); *Williams v. Halperin,* 360 F.Supp. 554 (S.D.N.Y.1973); *Bethea v. Reid,* 445 F.2d 1163 (3d Cir. 1971).

In *Griffin v. Breckenridge, supra,* however, the Court held that § 1985(3) does not emanate from the Fourteenth Amendment, at least as applied to private conspiracies against black people motivated by racial prejudice. The Court in *Griffin* noted that § 1985(3) is restricted to conspiracies to violate rights protected under the equal protection clause and did not cover conspiracies to deprive persons of other constitutional rights. As applied to complaints of racial discrimination brought by black citizens, then, § 1985(3) is a proper exercise of Congressional power under the Thirteenth Amendment, and state action is not constitutionally required. The court in *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926, 931 (10th Cir. 1975), extended this line of reasoning and indicated that § 1985(3) reaches federal officials. *Accord, Revis v. Laird,* 391 F.Supp. 1133 (E.D.Cal.1975). We agree with these decisions and hold that federal officers are suable under § 1985(3) for claims of racial discrimination.

*Id.* As to § 1986, the court concluded:

The scope of § 1986 coincides with its parent provision, § 1985, and need not be analyzed separately.

*Id.* In *Stith v. Barnwell,* 447 F.Supp. 970, 973 (M.D.N.C.1978) another District Court similarly held:

Federal employees would usually be acting under color of federal, and not state, law. The text of § 1985(3), however, does not indicate that defendant must be acting under color of any law, state or federal. As previously mentioned, the Supreme Court, in *Griffin,* rejected the requirement of state action, at least where racial discrimination is involved. In addition, the Supreme Court, in *Griffin,* said that § 1985(3) was aimed at all conspiracies which deprive persons of certain federally protected rights. Given the Supreme Court's decision in *Griffin* and the plain language of § 1985(3), the Court is of the opinion that the subsection would apply to federal defendants who participate in a conspiracy that would otherwise be proscribed by the subsection. See *Alvarez v. Wilson,* 431 F.Supp. 136 (N.D.Ill. 1977).

Indeed all the courts that have considered the problem in light of *Griffin* have held that §§ 1985(3) and 1986 apply to federal officers acting under color of federal law. *See also: Williams v. Wright,* 432 F.Supp. 732 (D.Ore.1976).

■ There are courts that have, subsequent to *Griffin,* held that §§ 1985(3) and 1986 would not allow private suits for damages against federal officers. *Lofland v. Meyers,* 442 F.Supp. 955, 957 (S.D.N.Y. 1977); *Williams v. Halperin,* 360 F.Supp. 554 (S.D.N.Y.1973). *See also: Bethea v. Reid, supra,* 445 F.2d at 1164; *Moore v. Schlesinger,* 384 F.Supp. 163 (D.Colo.1974); *Dickinson v. French,* 416 F.Supp. 429 (S.D. Ala.1976). However, none of these cases either noted or discussed *Griffin* and the opinions often relied upon pre-*Griffin* case law. Thus we hold that, in light of *Griffin,* § 1985(3) and § 1986 apply to federal officers acting under color of federal law at least where, as here, the conspiracy is motivated by racial animus and is intended to deprive a class of their right to interstate travel. *Cf. Weiss v. Willow Tree Civic Association,* 467 F.Supp. 803 (S.D.N.Y.1979).

■■ To state a cause of action under 42 U.S.C. § 1985(3) plaintiff must allege: the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."
*Griffin v. Breckenridge,* 403 U.S. at 102–103, 91 S.Ct. at 1798–1799. Plaintiff has failed to state a cause of action against defendants under 42 U.S.C. § 1985(3) because plaintiff has not sufficiently alleged that defendants were part of a conspiracy. Plaintiff alleges that informant Rowe was a conspirator, and that the individual defendants "approved the acts of Rowe and likewise participated and furthered the aforesaid conspiracy." (Complaint ¶¶ 23–24.) This unsubstantiated allegation is not enough. *See Robinson v. McCorkle,* 462

F.2d 111, 113 (3d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972). Plaintiff's only other basis for a charge of conspiracy in this case is that the defendants knew of the planned attack and failed to do anything to stop it. (Complaint ¶¶ 10–13.) Mere knowledge, however, is insufficient to sustain a claim of conspiracy under § 1985(3). *Byrd v. Local Union No. 24, Int. Bro. of Electrical Workers,* 375 F.Supp. 545, 558 (D.Md.1974).

■ Plaintiff also asserts a cause of action under § 1986. That section applies when a person, including a federal officer acting under color of federal law, has knowledge that an act mentioned in § 1985 is about to be done, has the power to prevent the same, and fails to act. Plaintiff has alleged all these elements.

First, plaintiff has alleged the existence of a § 1985(3) conspiracy between the Birmingham Police Department and the vigilantes. The § 1985(3) conspiracy requirement of § 1986 is satisfied even though the defendant was not a party to that conspiracy. *See:* *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 156 (E.D.Pa.1977); *Condosta v. Vermont Electric Cooperative, Inc.,* 400 F.Supp. 358, 363 (D.Vt.1975). Plaintiff alleges that the police agreed not to respond to any calls for fifteen minutes, allowing the vigilantes time physically to assault the "Freedom Riders" (Complaint ¶ 9). The purpose of the conspiracy is alleged to have been "the deterrence and discouragement of those who sought to challenge illegal segregation in interstate travel and in facilities serving interstate travel." (Complaint ¶ 18.) It is also alleged that the Birmingham Police (Complaint ¶¶ 16, 17) and the vigilantes (Complaint ¶ 16) did acts in furtherance of this conspiracy, and that as a result Peck suffered personal injuries (Complaint ¶ 15).

■ Plaintiff has alleged the other elements of a § 1986 cause of action. Plaintiff alleges that defendants had actual knowledge of the conspiracy (Complaint ¶¶ 10, 11). Plaintiff also alleges that the defendants had the power to prevent or aid in preventing the commission of the wrongful

acts (Complaint ¶ 27) but the complaint is barren of any factual allegation to support this claim. Plaintiff supplies the necessary information however in his Reply Memorandum of Law alleging that defendants could have passed along the information they had to the then Attorney General, Robert F. Kennedy. This, it is alleged, would have been sufficient in light of Robert Kennedy's acknowledgement 10 days after the attack of the duty of the federal government to protect the freedom riders and in light of other evidence indicating that the Attorney General and the President, after being informed of the attack on the Freedom Riders, had considered measures that could have protected the riders. Plaintiff's Reply Memorandum at 6–7. Finally plaintiff alleges that defendants failed to exercise their power to prevent or aid in preventing the conspiracy (Complaint ¶¶ 12, 13, 19, 20), that the conspiracy was allowed to succeed and that plaintiff was harmed thereby (Complaint ¶¶ 14–17). Plaintiff can assert that he was the victim of a conspiracy in violation of 42 U.S.C. § 1985(3) even though he is white and thus not a member of the class towards which the required invidiously discriminatory racial animus was directed. *Richardson v. Miller*, 446 F.2d 1247, 1249 (3d Cir. 1971); *Novotny v. Great American Federal S. & L. Ass'n.*, 430 F.Supp. 227, 229 (W.D.Pa.1977).

■ The individual defendants contend that even if plaintiff has stated a cause of action, they are entitled to absolute immunity under *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1958). In *Barr* a plurality of the Court held that a high ranking federal executive officer was absolutely immune from a common law tort suit based upon conduct otherwise within the official's authority. The Supreme Court subsequently held, in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) that high ranking federal executive officers, like their state counterparts, are only entitled to qualified immunity based upon good faith and reasonable grounds when sued for damages arising from their violation of a citizen's constitutional rights, even though the suit involves discretionary acts within the congressionally legislated scope of the official's authority, because:

> Whatever level of protection from state interference is appropriate for federal officials executing their duties under federal law, it cannot be doubted that these officials, even when acting pursuant to congressional authorization, are subject to the restraints imposed by the Federal Constitution.

*Id.* at 495, 98 S.Ct. at 2905. The Court, in its opinion, stated that had the official's conduct also been expressly forbidden by a federal statute, the claim of absolute immunity clearly would not have been upheld, *Id.* at 489, 98 S.Ct. 2894. It had been held even under *Barr v. Matteo* that federal law enforcement officers were only entitled to qualified immunity " 'whether the action is a common-law tort suit, a § 1983 [and presumably § 1986] suit, or a *Bivens*-type constitutional suit.' " *Crain v. Krehbiel*, 443 F.Supp. 202, 216 (N.D.Cal.1977). However it is clear in light of the recent Supreme Court opinion in *Butz v. Economou*, that where, as here, plaintiff is alleging that federal law enforcement agents violated an express statutory provision designed to prevent the deprivation of constitutional rights, the federal officers are entitled only to a qualified immunity. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As to whether or not the facts so far adduced during discovery indicate that the defendants in this case are entitled to immunity, Magistrate Schreiber found, and we agree, that:

> [D]iscovery in the instant suit has not yet conclusively indicated that defendants acted in good faith and upon reasonable grounds. Accordingly, it is premature to determine that defendants are immune from Peck's charges against them. [Magistrate's Report at 15.]

**B. *The Liability of the United States***

■ Although the doctrine of sovereign immunity generally shields the government from suit, the government may waive its immunity. *United States v. Sherwood*, 312

U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver in this case is found in the Federal Tort Claims Act of 1946, 28 U.S.C. § 1346(b). That section provides that the District Court shall have jurisdiction:

> of civil actions on claims against the United States for money damages, . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Magistrate Schreiber, in discussing the application of this section to plaintiff's common law claims, made findings as to many of the questions that are also relevant here. Magistrate Schreiber first recommended that we reject that part of plaintiff's claim against the United States under the theory of *respondeat superior* based upon informer Rowe's alleged participation in the conspiracy between the Klan and the police. Plaintiff alleges in his complaint that the individual defendants "supervised" Rowe and that Rowe was an "operative and informant acting as a member of the Ku Klux Klan in Birmingham, Alabama pursuant to the defendants' instructions prior to and during the incident and acts complained of herein." Complaint ¶¶ 5–7. Plaintiff subsequently makes several factual allegations that give content to the terms "supervise", "informant" and "operative" indicating that Rowe simply obtained and transmitted information to the FBI and that on one occasion he was directed to arrange a meeting and to elicit information which was to be overheard by the FBI agents. Complaint ¶¶ 10, 11. In light of this we adopt Magistrate Schreiber's finding that "the agency did not control his activities but merely received information from him, and such a relationship is not sufficient to establish employer liability." Magistrate's Report at 21. It is not alleged that Rowe was directed to participate in the conspiracy or in the assault, only that he was directed to obtain information about both (Complaint ¶ 11). Therefore, accepting as true the allegation that he participated in such conduct (Complaint ¶¶ 9, 23), he was not acting at that time as an "agent" of the government.[1]

Magistrate Schreiber also found that Peck's lawsuit was filed in compliance with 28 U.S.C. § 2675, *Morano v. United States Naval Hospital*, 437 F.2d 1009 (3rd Cir. 1971); that the United States could be held liable under the Federal Tort Claims Act even though this action arose from the performance of uniquely governmental functions, *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); and that the "assault exception" of the Federal Tort Claims Act, 28 U.S.C. § 2680(h) was inapplicable in this action, *United States v. Muniz*, 305 F.2d 285 (2d Cir.), *aff'd*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1962); *Pennington v. United States*, 406 F.Supp. 850, 851 (E.D.N.Y.1976). We adopt these findings.

The government has argued before us that because of the Second Circuit opinion in *Birnbaum v. United States*, 588 F.2d 319 (2d Cir. 1978) the United States cannot be held liable in this case. In *Birnbaum* the Second Circuit held:

> We do not believe that the Federal Tort Claims Act comprehends *federal constitu-*

---

1. Plaintiff's reliance on *Socialist Workers Party v. Attorney General of the United States*, 463 F.Supp. 515 (S.D.N.Y.1978) is misplaced. The issue of whether or not the informants in that case were "employees" or "agents" of the United States within the meaning of the Federal Tort Claims Act was not raised. *Id.* at 516. We note moreover that in the *Socialist Workers Party* case it was alleged that the government caused the informants to infiltrate the organization "for the purpose of spying, interfering with lawful organizing and political campaigning, and attempting to control and direct the activities of" the organization, *Id.* at 518. Since the cause of action arose out of these activities *Id.* at 520, the court, had it considered the matter, could have held the informant an "agent" of the government for purposes of that action. *See Id.* at 521.

*tional* torts in its reference to the "law of the place" under § 1346(b).

*Id.* at 327. [Emphasis in original]. The Second Circuit's decision was based upon the language of a House Judiciary Committee Report, H.Rep. 2245, 77th Cong., 2d Sess. at 9 (1942) reporting on the Act's direct predecessor bill, in which it was stated that the applicable rules of substantive decision, except where otherwise specified, were to be drawn from "local law." From this the court concluded:

> Attention was focused on everyday torts, particularly the sort of negligence of which automobile drivers are guilty. Even though federal law is supreme in the state courts, U.S.Const., art. VI; *Testa v. Katt*, 330 U.S. 386, 391, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *General Oil Co. v. Crain*, 209 U.S. 211, 226–28, 28 S.Ct. 475, 52 L.Ed. 754 (1908), one does not think of the specific terminology of "local law" except to describe a system different from federal law. In the absence of any indication that Congress conceived of "local law" under the Act as comprehending federal constitutional torts—only a glimmer until *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)—we are not prepared to adopt so unusually broad a reading of the "law of the place" requirement.

*Id.* Moreover, said the Court:

> [B]y adopting the "law of the place" as the source for rules of decision under the Federal Tort Claims Act, Congress expressly negated any possible inference that federal courts were to exercise any "common law-making" power to fashion torts under the Act in the interest of national uniformity.

*Id.* at 327–28.

This case is substantially different from *Birnbaum.* Plaintiff is contending here that there is a local law violation not because federal law, by virtue of the suprema-

cy clause, is incorporated into local law, but rather because in Alabama, the place where the act or omission occurred, violation of a statute, including the violation of a federal statute, *see Grey's Ex's v. Mobile Trade Co.,* 55 Ala. 387 (1876), designed to protect an individual from the harm suffered, is negligence *per se. Robbins v. Voigt,* 280 Ala. 207, 191 So.2d 212 (1966); *Allman v. Beam,* 272 Ala. 110, 130 So.2d 194 (1961); *Newman v. White,* 267 Ala. 67, 99 So.2d 698 (1957). Negligence *per se* is not a recent development but rather a well recognized local law tort. Moreover, since the scope of the tort of negligence *per se* for violation of a federal statute is dependent solely upon Congressional legislation, there is little danger that federal courts will be exercising their federal common law powers to expand the government's waiver of sovereign immunity. Courts in other circuits have held, at least implicitly, that negligence *per se* based upon violation of a federal statute if actionable under state law is a local law tort actionable under the Federal Tort Claims Act. *Castillo v. United States,* 552 F.2d 1385, 1388 (10th Cir. 1977); *Toole v. United States,* 443 F.Supp. 1204, 1213–15 (E.D.Pa. 1977).[2]

### C. *Common Law Claim*

 Magistrate Schreiber recommended that this court hold that the individual defendants owed a duty to protect plaintiff under the common law of Alabama. Magistrate Schreiber noted that:

> An examination of the law of Alabama reveals no common law or statutory provision which specifically recognizes Peck's common law claim, but where there is no precedent in state law, federal courts must look to general law to determine what a state court would probably rule in a similar case.

**2.** The United States also claims that the same immunity that applies to the individual defendants applies to the United States under the Federal Tort Claims Act. *Norton v. United States,* 4 Cir., 581 F.2d 390, *appeal pending* 47 U.S.L.W. 3227 (U.S. Sept. 18, 1978). This claim raises difficult questions of law. *See Crain v. Krehbiel,* 443 F.Supp. 202 (N.D.Cal. 1977), and we will defer any decision on this until such time as we find that the individual defendants are entitled to a qualified immunity.

Magistrate's Report at 9 [citations omitted]. Magistrate Schreiber relying upon several cases involving state and local law enforcement officers concluded that:

> when [FBI] agents have verified knowledge of impending violence and know that police protection will be withheld, their position as law enforcement officers places them in a situation where they, too, owe a duty to take reasonable steps to prevent injury to such individuals.

*Id.* at 10. We hold that there is no such common law duty, and we dismiss plaintiff's common law claim.

The Magistrate relied upon four cases: *United States v. Klans,* 194 F.Supp. 897 (M.D.Ala.1961); *Cottonreader v. Johnson,* 252 F.Supp. 492 (M.D.Ala.1966); *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); and *Sorichetti v. City of New York,* 95 Misc.2d 451, 408 N.Y.S.2d 219 (S.Ct. Bronx County 1978). The first three cases deal with a duty to protect imposed upon local law enforcement officers by federal law, not state common law. *United States v. Klans, supra,* involving a "Freedom Ride" incident similar to the one here, holds simply that the United States, to protect the public interest in the free and unobstructed movement of interstate commerce and in the exercise of its constitutional powers over such commerce, may enjoin local officers from withholding police protection to interstate travelers where such state inaction ratifies racial discrimination and deprives citizens of their due process right to travel. *Id.* at 902–903. The opinions in *Cottonreader v. Johnson, supra* and *Glasson v. City of Louisville, supra,* do speak of a duty of local law enforcement officers owed to private citizens to protect them in the exercise of their constitutional rights of expression, but these cases identify the source of this duty as 42 U.S.C. § 1983, see *Glasson, supra* at 906, inasmuch as failure to protect would be state action interfering with plaintiff's constitutional rights, *Cottonreader, supra* at 497. We have similarly held here that agents of the FBI have a duty under federal law, 42 U.S.C. § 1986, to prevent, or aid

in preventing a conspiracy in violation of 42 U.S.C. § 1985(3) of which they have prior knowledge. The last case, *Sorichetti, supra,* does speak of a *state common law* duty to protect. That case is one of a series of cases defining the common law duty to protect in New York. The common law duty in New York is a much narrower one than that proposed by Magistrate Schreiber. A municipality is not liable for failure to provide general police protection, *Murrain v. Wilson Line,* 270 App.Div. 372, 59 N.Y. S.2d 750, *aff'd,* 296 N.Y. 845, 72 N.E.2d 29 (1947) because a municipality is not generally liable to the public for its failure to exercise such a governmental function. 59 N.Y.S.2d at 753. Liability arises only where there exists on the part of the municipality some relationship creating a duty to use due care for the benefit of a particular person or classes of persons. *Baker v. The City of New York,* 25 A.D.2d 770, 269 N.Y. S.2d 515 (1966). In *Sorichetti* a special relationship existed inasmuch as the suit was brought by an infant for whom courts have generally been solicitous, and the family court had issued an order of protection for the benefit of the mother, which the trial court felt should probably be extended to the child.

Plaintiff has also referred us to an opinion issued by a federal district court in Alabama wherein it was held that under the law of Alabama the United States had a common law duty to protect the victim of a crime when it had prior knowledge of the crime. *Swanner v. United States,* 275 F.Supp. 1007 (N.D.Ala.1967) *rev'd on other grounds,* 406 F.2d 716 (5th Cir. 1969), *on remand,* 309 F.Supp. 1183 (N.D.Ala.1970). In that case however the victim was an informant for the government and the court phrased the duty to protect in terms of this special relationship. 275 F.Supp. at 1011, 309 F.Supp. at 1187. The court relied on a New York case, *Schuster v. City of New York,* 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958) where it was held that when the victim was an informant for a law enforcement agency a special relationship arose and the agency had a duty to

protect him. *See Crain v. Krehbiel,* 443 F.Supp. 202, 214 (N.D.Cal.1977). Thus it appears that to the extent that the federal courts in Alabama have considered the nature of the common law duty to protect in Alabama they have adopted the narrower New York rule. We would also adopt only the narrower New York duty to protect. Since prior knowledge alone is not sufficient to establish a "special relationship", no common law duty to protect arose in this case.

 Plaintiff also urges that defendants had a common law duty to warn him of the conspiracy and impending violence. Plaintiff relies upon cases in which the federal circuit courts have held that FAA air traffic controllers had a duty to warn pilots about weather, *Ingham v. Eastern Airlines,* 373 F.2d 227 (2d Cir. 1967) and atmospheric conditions, *Yates v. United States,* 497 F.2d 878 (10th Cir. 1974) and *Hartz v. United States,* 387 F.2d 870 (5th Cir. 1968). The general rule is that in the absence of a federal statute there is no legally enforceable duty on the part of the federal government to warn the victims of criminal activity. *Redmond v. United States,* 518 F.2d 811 (7th Cir. 1975). The cases cited by plaintiff stand for the proposition that the duty to warn may in some instances be assumed by the federal government even absent federal legislation. In those cases a duty was imposed upon the air controllers because of "the federal government's assumption of the supervision of commercial flying . . . It is now well established that when the government undertakes to perform services, which in the absence of specific legislation would not be required, it will, nevertheless, be liable if these activities are performed negligently." *Ingham v. Eastern Airlines, supra* at 235–236; *see also Hartz v. United States, supra* at 873–874; *Yates v. United States, supra* at 884. Thus the duty to warn is imposed only by federal legislation or by federal assumption of the duty.[3] In this case it has not been alleged

that the federal government voluntarily took some affirmative action by which it assumed the duty to warn victims of criminal activity. The duty to warn, if any, could therefore only have arisen under 42 U.S.C. § 1986—not by state common law.

### D. Constitutional Claims

 Plaintiff has also asserted claims directly under the Constitution, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 392, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However:

> As the concurring opinion of Mr. Justice Harlan makes clear, a premise of *Bivens'* holding is the fact that "some form of damages is the only possible remedy for someone in Bivens' alleged position." Because this premise is essential to the holding of *Bivens,* federal courts should not imply causes of action under the Constitution where there is already an adequate remedy for constitutional deprivations. Thus one important limitation upon the scope of *Bivens* is "that the existence of an effective and substantial federal statutory remedy for the plaintiffs obviates the need to imply a constitutional remedy." [Citations omitted.]

*Torres v. Taylor,* 456 F.Supp. 951, 953 (S.D. N.Y.1978). Inasmuch as plaintiff can obtain complete relief under 42 U.S.C. § 1986 there is no need to imply a cause of action based upon the denial of plaintiff's constitutional rights and we affirm the Magistrate's Report in that regard (Magistrate's Report at 20).

### II. STATUTE OF LIMITATIONS

Defendants have moved to dismiss the complaint on the grounds that the statute of limitations has run on all claims. For the reasons set forth below we will, at least for the present time, defer our decision on defendants' motion.

The applicable statute of limitations for the claims against the United States, as-

---

**3.** A duty to warn may also arise out of a special relationship between the government and the victim, *see Frank v. United States,* 250 F.2d

178, 180 (3rd Cir. 1957), but there is no such relational basis for a duty here.

serted under the Federal Tort Claims Act, is two years "after such claim accrues." 28 U.S.C. § 2401(b). Because the Federal Tort Claims Act is a waiver of sovereign immunity the limitations period "must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

▇▇▇▇ The problem in this case lies in determining when the cause of action "accrued." Federal law determines when a claim accrues within the meaning of 28 U.S.C. § 2401(b). *Toal v. United States,* 438 F.2d 222, 224 n.3 (2d Cir. 1971); *Kossick v. United States,* 330 F.2d 933, 935 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964). It has been held that ordinarily a tort action will be said to accrue when the act or omission complained of produces an injury, however slight. *Beech v. United States,* 345 F.2d 872 (5th Cir. 1965); *Toal v. United States, supra.* Plaintiff sustained his injury in 1961 and thus, under the traditional standard, the statute of limitations began running on that date.

▇▇▇▇ Plaintiff contends, however, that in this case the court should adopt and apply the "due diligence-discovery" rule of accrual. Under the "due diligence-discovery" rule the cause of action accrues not on the date of injury but rather on the date when the plaintiff in the exercise of due diligence knew or should have known of the facts giving rise to his cause of action. We find that this rule as to when the cause of action accrues is applicable under § 2401(b) only where the United States has concealed its acts with the result that plaintiff was unaware of their existence, *Fitzgerald v. Seamans,* 180 U.S.App.D.C. 75, 553 F.2d 220 (1977); *Pollard v. United States,* 384 F.Supp. 304, 309–310 (M.D.Ala.N.D.1974);

*But see Hammond v. United States,* 388 F.Supp. 928 (E.D.N.Y.1975); or plaintiff must show that its injury was "inherently unknowable" at the accrual date. *Quinton v. United States,* 304 F.2d 234 (5th Cir. 1962).[4]

▇▇▇▇ The applicable statute of limitations for plaintiff's claims against the individual defendants is found in 42 U.S.C. § 1986—one year after the cause of action accrued. Determination of when the claims accrued here is again a question of federal law. *Kaiser v. Cahn,* 510 F.2d 282. Generally, a claim accrues at the time that a tortfeasor interferes with a victims rights. *Rinehart v. Locke,* 454 F.2d 313, 315 (7th Cir. 1971). However, the federal courts have applied the "due diligence discovery" accrual rule where there has been concealment, *Fitzgerald v. Seamans,* 180 U.S.App. D.C. 75, 553 F.2d 220 (1977), and where there has been an "inherently unknowable injury," *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975); *Young v. Clinchfield R.R. Co.,* 288 F.2d 499, 503 (4th Cir. 1961).

▇▇▇▇ The parties agree that the "inherently unknowable injury" exception is inapplicable to the individual defendants and the United States. Plaintiff alleges however that the defendants concealed their wrongful acts (Complaint ¶ 21). Plaintiff, after only limited discovery, contends that this allegation is supported by the following: first, that they have found a document which indicates that the individual defendants instructed Rowe to lie about his participation in the attack on the Freedom Riders; second, that even though the United States, in May, 1961, sought an injunction based in part on the events that transpired in Birmingham, the United States did not reveal its role, or that of the individual defendants and of Rowe in the attack on

4. A similar construction has been given to the companion statute of limitations, § 2401(a) applicable to contract claims brought against the United States under the Tucker Act:

> In certain instances the running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know his claim . . . Plaintiff must either show that [the United States] has concealed

its acts with the result that plaintiff was unaware of their existence or [plaintiff] must show that its injury was "inherently unknowable" at the accrual date.
*Japanese War Notes Claimants Ass'n v. United States,* 373 F.2d 356, 358, 178 Ct.Cl. 630 (1967); *United States v. Sams,* 521 F.2d 421 (3rd Cir. 1975).

the Freedom Riders; and third, that in the 1965 trials for the murder of Viola Liuzzo, Rowe apparently perjured himself and defendants did not speak out. (Plaintiff's Memorandum at 39–40.) As to plaintiff's first allegation, the document relied upon does not seem to show that Rowe was instructed to lie about his participation in the attack on the Freedom Riders—rather it appears from the document that the FBI agents were merely recording an alibi concocted by Rowe and another (possibly a fellow Klansman) to be told to the FBI. As to the failure to disclose the government's role in the Freedom Ride in the 1961 action, the law is clear that, in the absence of a fiduciary duty between the parties, mere failure to disclose the existence of a cause of action does not constitute concealment. *Kansas City v. Federal Pacific Electric Co.,* 310 F.2d 271, 278 (8th Cir.), *cert. denied,* 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962); *Burnham Chemical Co. v. Borax Consolidated,* 170 F.2d 569, 577 (9th Cir. 1948), *cert. denied,* 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949); *Dayco Corp. v. Firestone Tire & Rubber Co.,* 386 F.Supp. 546, 549 (N.D. Ohio 1974), *aff'd* 523 F.2d 389 (6th Cir. 1975). *See Laundry Equipment Sales Corp. v. Borg-Warner Corp.,* 334 F.2d 788, 792 (7th Cir. 1964); *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 87 (2d Cir.). *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Indeed a denial of an accusation of wrongdoing does not constitute concealment. *Dayco Corp. v. Firestone Tire & Rubber Co.,* 386 F.Supp. 546, 549 (N.D.Ohio 1974), *aff'd* 523 F.2d 389 (6th Cir. 1975). Plaintiff's third allegation of perjury in the 1965 trial is also not helpful, since to survive the motion to dismiss in this case the concealment must have been prior to 1962—

otherwise the statute of limitations began running in 1961 and the action would have been time barred within the year.

■ Thus we are left only with plaintiff's bare assertion of concealment in his complaint.[5] However, because it is alleged that defendants were engaged in covert activities, it is possible that additional facts on this matter could be elicited if we allow the parties to go beyond the limited discovery allowed so far. Therefore, we decline to dismiss plaintiff's claim at this time, preferring to allow the parties the opportunity for further discovery on this matter.

Defendants argue that even if the "due diligence-discovery" rule is applied, plaintiff's claim accrued no later than 1965.[6] In 1965 Viola Liuzzo, a civil rights worker, was murdered in Alabama. Rowe was in the car in which the alleged murderers were riding and he testified against them in two state prosecutions, the first resulting in a hung jury and the second in acquittal, and in a federal trial resulting in convictions of several individuals for violating Mrs. Liuzzo's civil rights. Transcripts of these proceedings indicate that in the first state trial Rowe testified that he had been an FBI informant since 1960, that at the second trial Rowe testified that while working for the FBI he had been present at the Birmingham "Freedom Ride" incident for his "self preservation" but that he did not attack any of the Freedom Riders, and that in cross-examination at the federal trial he testified that he had called the FBI prior to the incident. The transcripts of the federal proceedings do not indicate whether Rowe, in this conversation with the FBI, disclosed the role of the local police in the alleged conspiracy. The government also points to three *New York Times* articles published at

---

5. Plaintiff has also asserted in his Memorandum of Law at 40, n.26 that:

It should be also noted that defendants concealed the fact that Rowe was employed by them until 1965. They then gave Rowe a new identity so that he was not approachable until he voluntarily "surfaced" at the Church Committee [the Senate Select Committee to Study Governmental Operations] hearing.

Again there are no factual allegations substantiating this bald allegation of concealment.

6. Plaintiff claims the cause of action accrued on December 2, 1975, when Rowe testified before the Church Committee with respect to the Intelligence Activities. Plaintiff alleges that Rowe's testimony noted that the Federal Bureau of Investigation ("FBI") had prior information about the conspiracy. This was reported in the papers on December 3, 1975, and plaintiff concedes that he had actual knowledge of Rowe's claim in March, 1976.

**1020**

the time of the trials. The first and second articles simply reported that Rowe had been an FBI informant since 1959. The last *New York Times* article:

> reported that on cross-examination Rowe was shown a picture from the Saturday Evening Post "depicting an attack on a Freedom Rider in 1963 in Birmingham. The lawyer asked Mr. Rowe if he were the assailant in the picture. He said he was not." Defendants' Memorandum of Law at 7.

 Even if we were to hold that plaintiff was on notice at least as to the newspaper accounts of the trial we could not say that on that basis alone plaintiff, in the exercise of due diligence, should have discovered the government's alleged wrongful acts. Nor should the news articles have put plaintiff on inquiry to investigate the trial transcripts. There was nothing in the news reports to suggest that Rowe was anything more than an observer at the Birmingham incident. Certainly there was nothing there to suggest that the trial transcripts might indicate that the FBI, through Rowe, had prior notice of the planned attack. Furthermore, even if plaintiff was on general notice as to the trial transcripts plaintiff could not reasonably have been on notice as to the contents of the specific transcripts relied upon by defendants. Defendants refer to only 23 pages of testimony in the course of three trials on an unrelated case, relying primarily on one statement made in cross-examination at the third trial. Moreover, the transcripts would not have given plaintiff notice of the 1985(3) conspiracy alleged here.

### III. CONCLUSION

We hold that plaintiff has stated a cause of action under 42 U.S.C. § 1986 against the individual defendants and against the United States. There is a substantial question as to whether or not this action is barred by the statute of limitations, and we will defer decision on this matter until the parties have had further opportunity for discovery.

SO ORDERED.